Thompson, J.-
The first question that appears to arise out of this case is, what we are to understand by the term barratry in a policy of insurance. In the case of Nutt v. Bordieu, (D. & E. 330,) Lord Mansfield says, barratry is something contrary to the duty of the master and mariners, the very terms of which imply that it must be in the relation in which they stand to the owners of the ship. An owner cannot commit barratry; he may make himself liable by his fraudulent conduct to the owner of the goods, but not as for barratry. It cannot be committed against the owner, with his consent, for though the owner may become *71 liable, by the misbehavior of the captain, if he consents, jet that is not barratry. It must partake of something criminal, or fraudulent, and to the prejudice of the owner. Park. 84; Cowp. 155. We may therefore define barratry to be some fraudulent act of the master or mariners, tending to their own benefit, to the prejudice of the owner of the vessel, without his privity or consent. George Martin, the charterer of the vessel, must be considered the' owner pro hac vice, so that if any fraud has beén committed on the owner, it must be on him. The jury find that the loss was occasioned by the fraud of the master. But who was to be benefited or prejudiced by this fraud, the jury would not undertake to say; or whether committed with or without the knowledge of the owner, is not found. It appears to me, therefore, that the finding of the jury is nothing more than that the loss was occasioned by the fraud of the master, which is an imperfect verdict; that, of itself, not amounting to barratry.. The j ury, by their answers to the questions put by the court, have negatived some of the *material facts, necessary to constitute the charge of barratry. That there has been a gross fraud committed, I think manifestly appears, and to subject the. underwriter to the payment of the loss would seem to savor of injustice. If this fraud was practised with the knowledge and consent of the owner of the vessel, it would make him responsible, and discharge the underwriter. The case presents very considerable doubt and difficulty, and I think, for the purposes of substantial justice, another examination of the cause is necessary, and that a new trial ought to be granted, more especially, as some affidavits have been offered of the discovery of testimony since the trial, tending to show, though rather remotely, that George Martin was privy to this fraud.
Kbft, J.
I do not think that it is essential to be made appear that the fraud was committfejd for the benefit of the master. If the master commits a' fraudulent act, in his *72 character of master, it is barratry. 2 Marsh. 444, 452. It is a criminal breach of duty in the relation in which ho stands to the owner of the ship. The person to be benefited by the barratry need not be made affirmatively. to appear. It is sufficient that the act was done with a fraudulent intent, and done by the captain, in his character of captain, and in breach of his duty and relation as captain. The,law will intend that it was done to the injury of the owner, until the contrary appears. Nor did the consignment of' the plaintiff’s cargo to the captain alter the case. The fraud of the master was not committed in the character of consignee of the plaintiff’s cargo, but in his character of master of the vessel. This is the true distinction on the subject, and which reconciles the doctrine in Emerigon with the plaintiff’s claim in the present case. The captain did not, and could not, lay aside his character and responsibility as master, until the vessel had performed'her voyage, and arrived at the port of destination. The accidental circumstance of the character of consignee being added to that of master, could not qualify or alter his acts as master; the two characters were totally distinct. The only question in this case that remains, is on the discovery of new testimony. I have examined the affidavit of "William Wilmerding; it relates some information he received of Peter Yan Wagener, who told him that one Foster, whose residence is unknown, *had called on him for some money that George Martin, who had chartered the schooner for that voyage, had promised to pay him, and threatened to disclose the whole fraud relative to the loss of the vessel. This affidavit does not even charge Martin with a concern or privity in the fraud, and leaves it only to be implied from the threat. It is a question whether even barratry, with the concurrence of the owners of goods, will exempt the insurer of goods belonging to an innocent shipper. Miller, 165, 167; Marsh. 452. The English authorities do, however, look very strongly to the opinion, that the insurer would not, in such case, be re- *73 Bponsible. Assuming tbe law to be so, the question is on the weight of this newly discovered testimony; and, in my opinion, the evidence is altogether too loose and uncertain. There is nothing positive, or from which we can deduce any conclusion. To grant a new trial on this suggestion merely, would be to allow the party to fish for testimony, and would introduce endless contention on the subject of new trials. Even if Foster’s testimony was more definite, there is no reasonable ground to expect it could be procured. He was probably a seaman, and it appears that it is not known where he is, or where he resides. I am of opinion, therefere, that the plaintiff is entitled to judgment, and that the motion for a new- trial be denied.

 As to decisions concerning barratry, see M'Intyre v. Bowne, 1 J. R 129; Steinbach v. Ogden, 3 Cai. R. 1; Hallett v. Col. Ins. Co., 8 J. R. 272; Thurston v. Caine, 3 Cai. R. 89; Cook v. Com. Ins. Co., 11 J. R. 40; Grim v. Phœnix Ins. Co., 13 J. R. 451; Vos v. United Ins. Co., 2 J. C. 180; Grim v. Phœnix Ins. Co., 13 J. R. 459; S. C. ib. 460; Suckley v. Dalafield, 2 Cai R. 222.