THE AMERICAN INSURANCE COMPANY *vs.* DUNHAM & WADSWORTH.

An *insurer* is liable for damages sustained in consequence of the seizure and detention of a vessel and cargo by reason of *prohibited goods* being found on board belonging to the *master*, shipped by him for the purpose of being smug_ gled, notwithstanding the clause in the policy that the assurer shall be free from charge, in consequence of seizure or detention for, or on account of any *illicit or prohibited trade*.

The warranty extends only to the acts of the assured, and of those acting with his knowledge and consent.

ERROR from the superior court of the city of New-York. Dunham and Wadsworth brought an action against the American Insurance Company, on three several policies of insurance: one upon the *vessel*, another upon the *freight*, and the third upon the *cargo* of a schooner belonging to them. They proved their ownership of the vessel, and of a portion of the cargo, and that other goods were taken on board on freight. The whole of the cargo consisted of lawful goods, admissible in the ports of *Colombia*, which were laden at New-York, and shipped for the purpose of being landed and sold at *Puerto Cabello*. The policies contained the following clause " It is also agreed that the property be warranted by the assured, free from any charge, damage or loss which may arise in consequence of a seizure or detention for, or on account of any *illicit or prohibited trade*, or any trade in articles contraband of war." On the arrival of the vessel at *Puerto Cabello*, it was discovered by the custom house officers there, that there was on board of the vessel a quantity of *tobacco* and *cigars* taken on board by the *cook*, one of the crew of the vessel, and also another quantity of tobacco and cigars, and other articles of

merchandize belonging to the *master* of the vessel, which had been clandestinely taken on board by the cook and master on their own accounts, without the knowledge or consent of the owners of the vessel or the supercargo, for the purpose of being *smuggled* into *Puerto Cabello*. The importation of tobacco and cigars was at the time of the arrival of the vessel absolutely prohibited by the laws of Colombia, and the other articles found in the possession of the master were by the same laws subject to the payment of duties, and required to be entered on the *manifest* of the vessel, but were not so entered. The vessel and cargo were thereupon seized by the custom house officers as forfeited to the government of Colombia, for a violation of the laws of the country prohibiting the importation of tobacco and cigars, and for the intended fraud on the revenue, by reason of the other articles found in the possession of the master not being included in the manifest. Proceedings against the vessel and cargo were instituted in the proper tribunals of Colombia, but through the exertions of the consignees there, the vessel and cargo were finally given up, at a heavy expense incurred ; and to recover the amount of the expenses paid by the plaintiffs, in effecting the liberation of the vessel and cargo, this action was brought. It was admitted by the defendant's counsel that the conduct of the master and cook in the premises was *barrartous,* but they insisted that the defendants were protected from liability by virtue of the clause in the policies exempting them from responsibility, in cases of *illicit* or *prohibited trade ;* and they prayed the court to charge the jury accordingly. The court instructed the jury that the clause referred to did not protect the defendants from liability, and the jury, under the charge of the court found a verdict for the plaintiffs for $1873, twelve cents damages and six cents costs, on which verdict judgment was entered for the plaintiffs. The defendants having excepted to the decision of the court, sued out a writ of error.

*J. Duer,* for the plaintiffs in error, insisted that by the true construction of the clause in the policies *against illicit trade* the insurers are not responsible for any loss of that description, whether resulting from the *barratry* of the master, or other-

ALBANY,
Oct. 1834.

American
Ins. Co.
v.
Dunham.

wise. The warranty is general against *any illicit* or *prohibited trade*, and extends as well to trade by the master or mariners as by the owners. Had it been intended to limit the operation of the clause to the owners, it would so have been expressed: but such could not have been its object, as the assurer never was liable for illicit trade by the owner, unless he had either expressly or impliedly assumed the risk of such trade. *Richardson* v. *Marine Ins. Co.*, 6 Mass. Rep. 102. It must therefore bear upon illicit trade by the master and mariners, or its operation will be confined to the illicit trade of passengers, which it will not be pretended it was the object of the clause to guard against. On the authority of the *dicta* of counsel, in *Bowne* v. *Shaw*, 1 Caines, 488, it will be said that the clause in question was introduced into our policies in consequence of the decision of this court in *Seton, Maitland & Co.* v. *Low*, 1 Johns. Cas. 1, in which it was held that articles contraband of war were *lawful goods*, within the meaning of a policy upon all kinds of lawful goods, and that the clause in question is to be construed in reference to the object of its introduction ; but by reference to the cases of *Smith* v. *Delaware Ins. Co.*, 3 Serg. & Rawle, 74, and *Faudel* v. *Phœnix Ins. Co.*, 4 Serg. & Rawle, 42, it will be seen that this clause was adopted as early as 1788, nine years before the policy, in the case of *Seton and others* v. *Low*, was underwritten. It stands, therefore, upon its terms, and will receive such construction as they require. In *Suckley* v. *Delafield*, 2 Caines, 222, the court decided, that under a clause like the one under consideration, the insurer was liable for a loss by illicit trade *barratrously* carried on by the master ; but the court did not pass upon the question whether the insurer was not protected by the clause exempting him from liability in case of loss by reason of *illicit trade ;* nor did they pass upon the effect of the conflicting provisions arising from the covenant of the insurer against the barratry of the master, and the warranty of the assured against illicit trade. It is conceded that the case of *Suckley* v. *Delafield* was supposed to settle this question against the insurer, but in the subsequent case of *Mumford* v. *The Phœnix Ins. Co.*, 7 Johns. R. 449, the case of *Suckley* v. *Delafield*, was substantially over-

ruled, and the question is now open for the adjudication of the court.

*J. Tallmadge,* for the defendants in error, relied upon the case of *Suckley* v. *Delafield,* as decisive here. He cited also 3 T. R. 277; 2 Binney, 579; 2 Condy's Marshall, 534: Phil. on Ins. 234, 5; and 13 Johns. R. 451.

*By the Court,* NELSON, J. In the case of *Seton, Maitland & Co.* v. *Low,* 1 Johns. Cas. 1, determined in 1791, this court decided, in an action upon a policy of insurance, that articles contraband of war were *lawful goods,* within the meaning of that term in the policy, and that any goods not prohibited by the positive law of the country to which the vessel belongs, are lawful goods. See also *Skidmore* v. *Deldoity,* 2 Johns Cas. 77, and *Juhel* v. *Rhinelander,* 2 id. 120, affirmed in the court of errors, in same vol. p. 487. The capture and detention in that case were on account of articles contraband of war. In consequence of this decision, the clause in question was introduced into the New-York policies, which protects the insurer " from any charge, damage or loss, which may arise in consequence of a seizure or detention for, or on account of any illicit or prohibited trade, or any trade on articles contraband of war." 1 Caines, 491, Hamilton, arguendo. This meets the supposed hardship of the rule established in the cases above referred to, in its broadest extent. Whether the clause of warranty by the assured against illicit trade, &c. included the barratrous acts of the master, was a question presented to the court in *Suckley* v. *Delafield,* 2 Caines, 222, some four years (1804) after the decision in the case of *Seton* v. *Low,* and when the purpose of the clause must have been well understood by the judges. The construction then given to it, and which is decisive of this case, should be adhered to, even if we were dissatisfied with it, which we are not. So clear were the court on the point, that, as appears from the report of the case, they declined hearing an argument on the part of the plaintiff. We are bound to presume that since that decision, parties have acted with a full knowledge of the construction then given to this clause in policies, and we should regret exceedingly, if

we were obliged, after the lapse of thirty years, to draw in question its soundness. If there ever was a case in which the court should feel bound by the maxim *stare decisis*, this is that case. A different construction now would shake and alarm the confidence of the commercial community.

The usual clause against the barratry of the master, I presume was contained in the policies in this case, (though the policies are not set forth in the bill of exceptions,) and which existed before the introduction of the clause now under consideration. The argument for the defendants below is, that barratry, by means of illicit trade, or putting on board contraband goods by the master since the new clause, is not insured against, it being embraced within the terms of the warranty. Now it was for the court to ascertain and determine the true meaning and intent of these two clauses; and having done so the court, as well as parties, are bound by it. They have, decided that this clause of warranty of the assured, does not interfere with or alter the clause of insurance against the barratry of the master. If any authority was wanted to sustain the decision of *Suckley* v. *Delafield*, the case of *Havelock* v. *Hancill*, 3 T. R. 277, may be referred to. There the defendant insured the ship Economy *in any lawful trade* for 12 months. The policy also contained a clause insuring against *the barratry of the master and mariners*. The ship was seized and detained for having on board a quantity of brandy, &c., which the master had put there without the knowledge or assent of the plaintiff; and for this act of barratry, the ship became forfeited, &c. All the facts were spread out in the declaration, to which the defendant demurred; and it was contended, on his part, that the seizure happened while the ship was engaged in an unlawful trade, namely, smuggling; and that it was indifferent to the underwriter whether it proceeded from the act of the master or owner. Lord Kenyon decided that the *owner* was not engaged in an unlawful trade, for the words *lawful trade* in the policy meant the trade in which the ship was sent by the owner; that the act of the master was barratry, within the policy against which the underwriter had insured. The principle, of the two cases are alike.

The case of *Mumford* v. *Phœnix Ins. Co.*, 7 Johns. R. 449, was undoubtedly decided under the impression, by the judge who delivered the opinion, that the act of the captain, in entering Cherbourg, after he was compelled to touch at Plymouth, was not barratry; and that if it could be deemed to fall within the term illicit trade, it would be within the warranty of the assured, and the right to recover defeated. 2 Johns. Cas. 187, 8, Kent, J. That the act was not barratrous, according to the doctrine of this court, is palpable. 2 Caines, 67. 13 Johns. 451. Phillips on Ins. 230, 1. Here the act of the master is indisputably barratrous, and we consider it too well settled in this court, to admit of question that the policy covers a loss *thus arising*, without regard to the particular act whether from illicit trade or otherwise, notwithstanding the warranty of the assured. Phillips on Ins. 235, 6.

Judgment affirmed.