## WILLIAMS vs. NICHOLS & PERRY.

Where the *master* of a vessel in which goods are shipped is the *consignee* of the cargo, he stands in the relation of *agent to two distinct principals :* in the stowage of the cargo, its safe conveyance and delivery, he is the agent of the ship owner ; but in its sale, and in accounting for its proceeds, he is the agent of the consignor—and in such case, where the owner receives only the *freight*, and the master *commissions* upon the sales, and *the master neglects* to account for the proceeds, an action will not lie against the owner for such neglect.

ERROR from the superior court of the city of New York. Williams sued Nichols and Perry in the marine court of the city of New York, and declared against them, for that he had shipped 100 dozen brooms on board a schooner belonging to the defendants, to be carried from New York to Richmond, at the freight of $\frac{15}{100}$ per dozen, and that the defendants had not delivered the brooms to the plaintiff or his consignee, or returned the same. The declaration also contained a second count, setting forth a promise of the defendants to carry the brooms safely to Richmond, and there deliver them to one Captain Avery, and charging negligence and want of care in the stowage and carriage of the brooms, whereby they were spoiled and rendered of no value, and that they did not deliver them in good order to the consignee. The defendants pleaded the *general issue.* On the trial of the cause, it was proved that the brooms were put on board the schooner of the defendants, of which one H. C. Avery was master ; that the master undertook to put the brooms in the hold of the vessel, and gave a receipt for them in these words : " Rec'd New York, 24th Sept. 1831, on board the schooner Francis 100 doz. brooms freight $\frac{15}{100}$ per dozen, consigned to Capt. Avery." The brooms

ALBANY,
Oct. 1834.

Williams
v.
Nichols.

were not put in the hold of the vessel, but were deposited in *carriages* on deck, and were safely carried to Richmond, with the exception of 6 or 8 brooms, the handles of which were broken, and were there sold by Capt. Avery. The value of the brooms shipped by the plaintiff was proved to be from eight to nine shillings per dozen. The plaintiffs proved that the brooms were put on board the schooner *for sale and returns*, that such was the usual course of trade between the ports of New York and Richmond, and that the receipt given in this case was in the customary form used when goods were shipped for sale and returns. It was further proved that it was the usage of trade between New York and Richmond, for the masters of vessels to take goods on consignment for sale and returns, and that a commission of $2\frac{1}{2}$ per cent was allowed the consignee for selling. On the part of the defendants it was proved that according to the *usage* of the *southern trade*, the master of the vessel receives a commission for his trouble, and the owners of the vessel receive the freight; and in this particular case it was proved that the plaintiff had acknowledged that he had agreed to pay the master commissions. The court charged the jury that the defendants were answerable as common carriers for goods laden on board their vessel, unless lost by inevitable accident or public enemies; that the master of the vessel was their agent; that if it was the usage of the trade for masters of vessels to receive goods *for sale and returns*, the ship owners were liable, in case of loss; that it was unimportant whether the brooms in this case were consigned to the master or not, and that if the brooms were injured in consequence of improper stowage, the defendants were liable. The jury found a verdict for the plaintiff for $100, which sum and the costs of suit the marine court rendered judgment. The *defendants* removed the record into the superior court of the city by *certiorari*, where the judgment was *reversed*. Whereupon the *plaintiff* sued out a writ of error.

*H. S. Mackay*, for plaintiff in error.

*J. A. Merrill & C. O'Connor*, for defendants in error.

ALBANY,
Oct. 1834.

Williams
v.
Nichols.

*By the court,* SAVAGE, Ch. J.   The only question of law in the case is, whether the owners of the vessel are responsible for the acts of the master as *consignee* of the goods.   The plaintiff contends that the defendants were bound to see that Captain Avery made sales and returns to him.   The defendants insist that the captain acted in two capacities—one as servant of the ship owners, the other as consignee of the goods—and that for his acts in the latter capacity they are not responsible.

The general rule undoubtedly is, that the owners are bound by every lawful contract made by the master relative to the usual employment of the ship.   *Abbott,* 118.   The master is the confidential agent of the owners, and they are bound by his contracts, by reason of the profit they derive from the employment of the ship ; and the usual employment of the vessel is evidence of the authority of the master, given by the owners, and his contract is considered theirs.   *Abbott,* 113. 1 *Livermore,* 70, § 15.   It frequently happens that the same person is not only *master* of the ship, but also *supercargo,* or *consignee* ; he then acts in two distinct characters ; and when the vessel and the cargo are owned by separate persons, and the master is consignee of the cargo, or any part of it, he then stands in the relation of agent to two distinct principals at the same time.   In the stowage of the cargo and the navigation of the vessel, and in the conveyance and delivery of the cargo, he acts as agent of the owners ; but in the sale of the goods consigned to him, and accounting for the proceeds, the owners are in general not responsible for the fidelity of the master. In that business he is not their agent, but the agent of the consignor.   "Upon the arrival of the ship at her port of destination, he delivers the cargo as master, and receives it as consignee.   All his authority as master is then determied, as is also the responsibility of the ship owner, who will not be answerable for any negligence or fraud, of which he may be guilty in the sale and disposition of the cargo consigned to him."  2 *Livermore,* 215.  Such is unquestionably the general rule of law.   There are some cases which may be supposed to be at variance from this doctrine, but I apprehend they all limit the authority of the master to bind the owners

by his contracts, made in the usual course of employment of the vessel. In *Kendrick* v. *Delafield*, 2 *Caines*, 72, Kent, justice, says, that the circumstance of the master being consignee of the goods could not alter his acts as master; the two characters were distinct. There can be no doubt, therefore, that in the transaction before us, the defendants, as owners, were liable for any damage done for the brooms, owing to any negligence of the master in improperly stowing them. If they received damage from being carried upon deck, when by the contract they should have been put into the hold of the vessel, the owners are liable for such damage. But if the master, as consignee of the brooms, sold them, and applied the proceeds to his own use, and refused to account with the owner of the brooms, and pay over the money, the master is responsible as the agent of the shipper; the owners are not responsible for such default of the master, unless in the sale of the goods as consignee, he acted as agent of the owners. The case of *Kemp.* v. *Coughtry*, 11 *Johns. R.* 107, is one which was peculiar in its circumstances and deserves attention. There the plaintiffs delivered on board the defendant's vessel a quantity of flour, near Albany, to be carried to the city of New York, and there sold in the usual course of such carrying business, and for which they were to pay the odinary freight in such cases. The master carried the flour to New York, sold it and received the money; part he paid to the plaintiff, and part was stolen from him, as was alleged. It was shown in that case to be the usual course of business, to send goods with orders to the master to sell either for cash or on credit, or to deliver to other persons. The price of freight was not increased in consequence of the master being directed to sell the goods and bring back the money; no commission was charged by the master; nor did any profit accrue to the owner; nothing beyond freight was paid either to the master or owner. It was the duty of the master to account to the owners of the goods, and not to the owners of the vessel, for the proceeds of the goods shipped. In reference to the usage proved in that case, the court say, that although no commission was to be received on the money, yet it appears to be a part of the duty attached to the employment, and in the usu-

ALBANY,
Oct. 1834.

Williams
v.
Nichols.

al and ordinary course of busines, to bring back the money when the cargo is sold for cash ; the freight of the cargo is the compensation for the whole; it is one entire concern ; and the suit may be brought against the owners of the vessel. The master is considered their agent or servant, and they are responsible for the faithful discharge of his trust. If the course of trade in the present case was similar to that above alluded to, then that case would be an authority for the plaintiff. The evidence as to the usage and course of trade between New York and Richmond was as follows : Hatfield, a witness for the plaintiff, says that the brooms were put on board for sales and returns—that is, on freight to be sold by the captain ; two and a half per cent, are allowed to the consignee for selling. The schooner of the defendants was a regular trader between those places, and it was according to the usage of the trade for masters to take goods on consignment for sale and returns. On this point the defendant produced witnesses. *Allen* said that goods were sometimes consigned to the captain for sale and returns; that the captain gets a commission for his trouble, and the owners get their freight. *Coffin* said the usage was, that the captain accounts with the consignor, allows to the vessel the freight, and takes the commission to himself. It was also proved that the plaintiff had agreed to pay Captain Avery commissions. It will be seen that the usage in this case differs from that in the case of *Kemp.* v. *Coughtry.* There the freight which went to the owners was the compensation for carrying the goods to market, selling and accounting—it was one entire concern. Not so in this case. Here the owners received the freight, and the captain received the commissions for his trouble, showing that it was no part of his duty as master to make sales and returns ; this was impliedly at least admitted by the plaintiff when he agreed with the captain to pay him the commissions. The captain was in this respect the plaintiff's agent, not the defendants. The master is the agent of the owners in respect of the employment and earnings of the vessel; not the separate services of the master, unless their is an usage like that in *Kemp* v. *Coughtry*, that the sale of the goods shall be a duty attached to the employment

of the master. There was no usage in this case variant from the general rules of the common law. The marine court erred, therefore, in charging the jury that the owners were liable, if the captain received the brooms *for sales and returns.* They should have charged them that if the goods were injured by reason of improper stowage, the owners were answerable for such injury, but not for the proceeds. The owners were responsible for the acts of Captain Avery as master, but not as consignee of the plaintiff's goods. The superior court were correct in reversing the judgment of the marine court, and their judgment must be affirmed.