HERBERT (DADE v.). See Case No. 3,532.

HERBERT (FOSS v.). See Case No. 4,957.

HERBERT (GILMAN v.). See Case No. 5,-442.

HERBERT (HOOFF v.). See Case No. 6,-670.

## Case No. 6,397a.

### HERBERT v. The JAMES LEAKMAN.

[18 Betts, D. C. MS. 141.]

District Court, S. D. New York. April 15, 1851.

#### MARITIME CONTRACT.

[The contract of the master, duly authorized by the vessel owners to sell the cargo, and transmit the proceeds to the shipper, as a part of the contract of shipment, for which service he is compensated in the freight received, is not a maritime contract, and not binding on the vessel, where the proceeds are not actually placed on board the vessel.]

[This was a libel in rem by Isaac Herbert against the schooner James Leakman (Robert Ferdeen, claimant) for breach of a contract of affreightment.]

BETTS, District Judge. The libellant being the manufacturer of brick at Caldwell on the North river in the summer of 1847, contracted with the master of the schooner Leakman, a vessel engaged in freighting brick, to carry brick to New York, there make sale of them at a scale of prices stipulated, and return the proceeds to the libellant, deducting $1 per thousand for the whole compensation both of freight and making the sales, and return of proceeds. During the season a large quantity of brick was carried by the schooner to New York under the contract. The libel charges the quantity to be 608,000, and the amount of proceeds to have been $2,292.84, from which, deducting the freight compensation, $608, there remained $1,684.84, net proceeds belonging to the libellant, of which sum there had been returned and paid to him only $1,242.22, leaving a balance due him of $442.62, for which he charges the schooner is liable to him. The libel alleges it to be the regular usage and custom of navigation and trade, between New York and places situated on the North river, for vessels to carry brick to market upon the terms and conditions above stated, and excuses the delay of this suit, because of disputes and controversies between third parties as to the owner-

ship of the schooner. The claimant, in his answer, avers that he became a bona fide purchaser of the schooner, some years after all the aforesaid transactions with respect to the carriage of the brick had been completed, and without notice of any claim of lien by the libellant on the said vessel therefor, and that the schooner has remained since, performing the services aforesaid, within this state and district. It also alleges that Joseph Andreus was master of the schooner at the time the brick was carried to New York for the libellant, but denies it was consigned and entrusted to him for sale, and avers that it was consigned to Charles Andrews, a resident in the city of New York, who was agent and partner of the libellant in the matter, and made sale of the brick partly for cash and partly on credit, and further denies, on information and belief, that any balance is due the libellant for the proceeds of said brick. Many other particulars are introduced into the pleadings, and were minutely inquired into upon the hearing, but in the view I take of the case it is quite unnecessary to settle the legal or equitable rights of the libellants under the agreement either with the master, Joseph Andreus, or the then owner of the schooner, and alleged agent of the libellant, Charles Andrews.

The case presents only two questions important to be considered here: The liability of the vessel to discharge this demand as a lien upon her; and the right of the libellant, if he had a lien originally, to pursue it against a bona fide purchaser, without notice, after a lapse of two years or more from the close of the transaction. The main point however, turns upon the question of law, whether a contract of the character entered into by the master of the schooner with the libellant enures as a lien or privilege against the vessel, holding her responsible for its performance in all its parts. This same subject came before this court in two causes in 1845. They were not contested, and decrees were rendered by default against the vessel; but, on recurring to the files, it is found that in one in which the undertaking and acts of the master of the vessel were charged to be carrying the brick to New York and selling the same, under an agreement to pay the proceeds to the libellant, the compensation for both services being the freight received alone, the libel was amended by inserting an averment that the master had received and taken in money on board the vessel, the proceeds of the bricks. Fanny v. The Catherine [unreported]. It is manifest from this very labored and full correction of the libel, that the court even on default refused to decree the vessel liable, except upon the fact that the proceeds were laden on board her to be returned to the libellant. The present case stands wholly clear of that feature. There is no proof that any money or other thing received by the master for the brick taken to New York, and there sold, was brought on board the schooner. The evidence goes no further than to show a transportation of the brick to New York, and a sale of them there, and the receipt of portions of the proceeds in cash by Charles Andrews in the city. The case is thus stated, in order to present distinctly the point of law to be decided, although it is proper to remark, that by the answer and the proofs it appears two vessels were employed by the libellant, at the same time, upon the same terms, and that the bricks carried by both were under charge of Charles Andrews in New York, he then being owner of both vessels, and were mainly sold by him. I do not take into consideration the argument pressed for the claimant, that the libellant fails disconnecting the portions of those proceeds arising from the bricks carried on board the schooner, which remain unsatisfied to the libellant, because, as already suggested, the decision of the cause will be placed on grounds covering both.

The only case cited on the argument which supports the doctrine contended for by the libellant is that of Kemp v. Coughtry, 11 Johns. 107. Emery v. Hersey, 4 Greenl. 407, is to the same effect, with the addition that the owner was held liable as a common carrier, although there was no proof that the proceeds had been received on board the vessel. In Kemp v. Coughtry, the sloop Washington, of which the defendants were owners, transported 156 barrels of flour, and a quantity of shorts for the libellants to New York, to be there sold, and it was proved to be the custom in such cases for the master to sell the property, and return the proceeds for the single compensation of the freight agreed. It was also proved that the cargo was sold for cash, and the money, except $186, paid the plaintiff, was brought on board the sloop at New York, to be taken to the plaintiffs at Albany. The vessel was broken open and robbed of the money in New York. The court held the owners were common carriers of the cargo down and its proceeds back, whether the proceeds were merchandize or money, and that in the sense of being laden on board the vessel to be returned, their liability as common carriers attached. The case is distinguishable from the present in two particulars: (1) It may imply that the owners are responsible for the contract of the master as their agent to return the proceeds, and can be charged with the damage sustained by the shipper because of the non-performance of that contract. If so, the liability resting upon agreement may be enforced at common law, without regard to the fact whether the master had ever had the money or proceeds of the cargo. The agreement could be a personal one, resting upon the consideration of the freight paid and enforced against the owners as the principals to the agreement, made by their agent. Or

(2) the decision goes only to the extent of charging the owners as common carriers for property actually placed on board the vessel. Neither feature exists in the case before the court. The action is not in personam against the owners, upon a contract made by the agent, in which the inquiry would be only as to the authority of the agent to bind the owners personally; nor is it founded upon the fact that the proceeds of the cargo were ever received on board the schooner. These particulars are of the highest importance in considering the principle upon which a vessel is liable in rem for the contracts or acts of the master. 13 Wend. 58. Judge Ware notes the distinction, and comments upon it with marked emphasis. He says the master acts as partner, when the goods are consigned to him for sale, and the ship or owners are not responsible for those acts. The Waldo [Case No. 17,056]. The ship is not bound by his acts on contracts out of the scope of his employment as master (Abb. Shipp. 125–127, and notes; 3 Kent, Comm. 162; Story, Ag. § 121); and that authority per se relates only to matters directly for the ship or on board the ship, appertaining to her fitment, navigation, affreightment, and safe-keeping.

I can find no instance in which the engagements or transactions of the master, although authorized or sanctioned by the owners, are made liens on the ship, unless they are essentially maritime in themselves.

The acts of a master in selling a cargo in a foreign port, and investing or transmitting the proceeds otherwise than by the ship, are not maritime acts, affecting the vessel, however valuable they may be to the owner, or whatever may be his individual responsibility in regard to them. This principle is involved in the case of Williams v. Nichols, 13 Wend. 58. In my opinion, the undertaking of the master, if with the approval and ratification of the owner, which is charged to be unfulfilled, was not a maritime contract, which can be enforced against the vessel, and that the remedy of the libellant, if he has any, upon it, must be by an action at law against the owner. This point is conclusive of the merits of the case, and renders it needless to discuss the other topics put in issue by the pleadings. It does not appear there was any failure on the part of the master to carry and deliver the brick in New York, according to the contract. The down freight was all which was placed on board the schooner, and for which she could be charged in rem in the hands of her then owners. The gravamen of the action is a non-fulfilled contract of the master of a personal, and not a maritime character. The libel must be dismissed, with costs.