NEW-YORK,
May, 1814.

KEMP AND BILLINGS *against* COUGHTRY AND OTHERS.

KEMP
v.
COUGHTRY.

TWO of the defendants, *Sherman* and *Yale*, were owners of a sloop, called the *Washington*, employed in carrying and transporting goods, &c. between the cities of *New-York* and *Albany*; and in the spring of the year 1813, they agreed to sell the one third part of the vessel to *Coughtry*, the other defendant, who was the master, and for a price stipulated; the conveyance of the one third to be executed on the payment of the money. In the mean time, *Coughtry* was to take charge of the vessel, as master, and use and employ her for the benefit of the other defendants, who were to pay him wages for his services. No payment was made by *Coughtry* in pursuance of that agreement. In *June*, 1813, the plaintiffs delivered on board of the vessel, at *Coeymans*, near *Albany*, 156 barrels of flour and a quantity of shorts, to be *carried to the city of New-York, and there sold*, in the usual course of such carrying business, and for which they were to pay the ordinary freight in such cases. *Coughtry*, as master of the said sloop, carried the flour and shorts to *New-York*, and there sold them for 1,081 dollars and 19 cents, in cash, part of which sum, one hundred and eighty-six dollars, he paid to the plaintiffs; but the residue, being 895 dollars and 19 cents, he alleged was lost in *New-York*.

The witnesses, as to the loss of the money, testified, that while the vessel lay at the dock, in the *East River*, *Coughtry*, the master, and all his crew, about sunset, went in the boat across the river, for the purpose of bathing, having requested the master of a sloop, lying next to the *Washington*, to permit one of his men to look after the vessel in their absence. The cabin door was locked when the master and his crew left the vessel; on their return in the evening, after being absent near an hour, they found the man belonging to the other vessel asleep. *Coughtry* went into the cabin, the door of which was open, but soon returned on deck and said he was robbed. The witness then went down into the cabin, and found a trunk broken open, and *Cough-*

The owners of vessels employed in the transportation of property, are considered as common carriers, and liable to all the duties and responsibilities attached to that character; being liable for the safe delivery of all goods intrusted to them or their agents, or servants, unless the loss is occasioned by *inevitable accident*, or a public enemy. Where a master of a vessel, employed in the transportation of goods between the cities of *Albany* and *New-York*, received on board a quantity of flour to be carried to *New-York* and there sold, in the usual course of such business, for the ordinary freight; and the flour was sold by the master at *New-York* for cash, and while the vessel was lying at the dock, the cabin was broken open and the money stolen out of the master's trunk, while he and the crew were absent; it was held that the owners of the vessel were answerable for the money to the shippers of the flour, though no commissions, or a distinct compensation, beyond the freight, was allowed for the sale of the goods and bringing back the money, such being the duty of the master, in the usual course of the employment, where no special instructions were given.

NEW-YORK,
May, 1814.

KEMP
v.
COUGHTRY.

*try* declared he was robbed of 1,200 dollars and some clothes, but afterwards recollected that he had lent 150 dollars of that sum. Search was made, but nothing could be discovered of the money or the thief. The cabin door was secured with iron fastenings, which appeared to have been forced off.

Several merchants, masters and owners of vessels at *Albany,* concerned in the business of shipping and transporting goods. between that place and the city of *New-York,* were examined as witnesses. They testified, that it was the usual course for the owner of the goods to make out a bill of the articles to be sent, which was delivered, with orders, or directions, to the master. These orders, which were either verbal or written, were sometimes to sell for cash or on credit, and sometimes to deliver to certain persons. The price of the freight was not increased by the circumstance of the master being ordered to sell the goods and bring back the money to the owner; nor was any commission charged by the master, nor did any profit accrue to the owner, on account of such selling for cash, and returning the money. Sometimes the goods were delivered to be disposed of at the discretion of the master, but no additional compensation was allowed beyond the freight; and, according to the course of the business, it was the duty of the master to account to the owners of the goods, and not to the owners of the vessel, for the avails or proceeds of the goods shipped.

It appeared that the plaintiffs had delivered a memorandum in writing to the master, of the number of barrels of flour shipped, but without any written directions.

On this case, the question raised for the consideration of the court was, whether *Sherman* and *Yale* were liable to the plaintiffs, for the money so received for the flour, and lost, either by themselves, or jointly with *Coughtry?*

*A. Van Vechten,* for the plaintiffs, relied on the case of *Elliot and Stewart* v. *Rossell and Lewis,* (10 *Johns. Rep.* 1.)

*Foot,* contra.

*Per Curiam.* Since the decision of this court in the cases of *Colt* v. *M'Mechen,* (6 *Johns. Rep.* 160.) and *Elliot and Stewart* v. *Rossell and Lewis,* (10 *Johns. Rep.* 1.) it is no longer to be questioned, that the owners of vessels employed in the transpor-

tation of property, are to be considered *common carriers*, and liable to all the duties and responsibilities attached to that character. They are responsible for the safe delivery of all goods intrusted to them, or their agents, or servants, unless the loss is occasioned by the act of God, or a public enemy. The general principles being well settled, the only question is, whether they are applicable to the present case. Had the property which was put on board this vessel for transportation been stolen, before it was converted into money, there could be no doubt the defendants would have been responsible. But the character of common carrier does not cease upon the sale of the property. According to the testimony in this case, the sale of the goods and return of the proceeds to the owner is a part of the duty attached to the employment, where no special instructions are given. The contract between the parties is entire, and is not fulfilled on the part of the carrier until he has complied with his orders, or has accounted with the owner for the proceeds, or brought himself within one of the excepted cases. The sale in this case was actually made, and the money received; and had it been invested in other property, to be transported from *New-York* to *Albany*, there would be no question but the character of common carrier would have continued. It can make no difference whether the return cargo is in money or goods. A person may be a common carrier of money as well as of other property. (*Carth.* 485.) Although no commission or distinct compensation was to be received upon the money, yet, according to the evidence, it appears to be a part of the duty attached to the employment, and in the usual and ordinary course of the business, to bring back the money, when the cargo is sold for cash. The *freight* of the cargo is the compensation for the whole; it is one entire concern. And the suit may be brought against the owners of the vessel. The master is considered their agent or servant, and they are responsible for the faithful discharge of his trust. The plaintiffs are, therefore, entitled to judgment for the sum of eight hundred and ninety-five dollars and nineteen cents.

NEW-YORK,<br>May, 1814.<br><br>KEMP<br>v.<br>COUGHTRY.

Judgment for the plaintiffs.