## EMERY vs. HERSEY.

Where, in the usual course of business, goods shipped on freight are consigned to the master for sales and returns, the owner of the vessel is liable, as well for the payment of the proceeds to the shipper, as for the safe transportation of the goods.

To subject the hirer of a vessel to the liabilities of an owner, he should have the possession, and the entire control and direction of the vessel; so that the general owner, for the time being, could have no right to interfere with her management.

THIS was *assumpsit*, brought to recover of the defendant the value of a quantity of boards, which the plaintiff had shipped on board the defendant's sloop to *Newburyport*, consigned to the master : and it came before this court by a writ of error upon the judgment of the court below.

At the trial in that court, before *Smith J.* the plaintiff called *Coolbroth*, the master of the sloop, as a witness; by whom it was proved that the vessel was let to the master on shares; the master to victual, man and sail the vessel, and to receive one half the freight money, and five dollars for each trip she might perform ;—that she was nearly loaded with wood by *Granger, Scamman & Co.* at the mouth of *Saco* river, at some distance from the defendant's house ; but not being fully freighted, the plaintiff, at the request of the master, shipped the boards in question, consigning them to the master for sales and returns. The boards were landed at *Newburyport*, and sold by the person to whom the wood was consigned, for the plaintiff's account, and the proceeds paid over to *Coolbroth*. On his return to *Saco*, he handed the account of sales of the plaintiff's lumber to Mr. *Gran-*

*ger,* of the firm of *Granger, Scamman & Co.* requesting him to pay the plaintiff, out of the freight money due on that trip, which he agreed to do. This arrangement was afterwards stated by the master to the plaintiff, and by him assented to. The master at this time was indebted to the defendant, but not on account of freight money.

While the vessel had been thus employed by *Coolbroth* on shares, he had several times contracted for the freight, at the defendant's request ; because, he said, *Coolbroth* could make the best bargain; and the freight money had been received by either of them, as was most convenient at the time.

The plaintiff subsequently spoke to *Granger* respecting the sales of his lumber, and was informed of the arrangement made by the master for payment of the balance due him, which he did not disapprove. *Granger* would then have paid him, had they met at his place of business. After this, the defendant, calling on *Granger* for the freight of the wood, was made acquainted with the preceding transactions, of which he expressed his disapprobation; denying the right of *Coolbroth* so to appropriate the freight money, and claiming it as belonging to himself. *Granger* then settled with the defendant for the freight of the wood, the amount of which was fifty one or two dollars, and paid him a balance of about twenty eight dollars, the residue having been previously advanced to *Coolbroth* ; taking the defendant's written promise to indemnify him for paying it over. The vessel had been in the employ of the same persons for several preceding trips ; and the freight account had been settled by *Granger* with the master, who had generally taken a note payable to the defendant for his half of the freight money.

It was proved to be customary at *Saco,* when lumber was shipped on freight, for the master to sell it, and pay over the proceeds himself to the owner of the lumber ; unless he had orders to the contrary.

The defendant filed an account in offset ; in which, among other things, he charged the plaintiff with the freight of the lumber in question.

The judge being of opinion that, upon this evidence, the defendant was not liable, and a verdict being thereupon returned in

his favor, the plaintiff filed exceptions. The record was brought up, on an assignment of the general error.

*E. Shepley,* for the plaintiff, argued first upon the general liability of the defendant, as owner of the vessel, to fulfil every lawful contract made by the master, relating to the ship The only exception to this rule, he insisted, was where the master was owner *pro hac vice* ; and in the present instance the master was not within the exception, even upon the strongest adjudged cases. In *Reynolds v. Toppan* 15 *Mass.* 370 the hiring was for a certain time, and by a written agreement. So in *Taggard v. Loring* 16 *Mass.* 336. In both those cases the contract was certain, and the master had the absolute control of the vessel, during the stipulated time. But in the present case the contract was at the will of the owner ; who denied the rights of the master to appropriate the freight money ; treating him as his servant, removable at his pleasure.

2. The defendant is liable, because he adopted the act of the master, by charging the freight to the plaintiff in account ; and by claiming the freight money of *Granger.* The contract of the master was binding on the owner, even without such adoption. *Abbot on Shipping* 136. And it was not out of the course of his legitimate power to bind the owner ; for his contract to bring home the money rests on the same principles with his contract to carry the goods. *Kemp & al. v. Coughtry & al.* 11 *Johns.* 107.

3. But if the defendant is not liable as owner, yet he is liable on the count for money had and received ; by taking from the hands of *Granger* the money deposited there for the plaintiff. If the defendant claimed it as owner, he is liable as owner ; if not, he could not touch the money, but by action. 1 *Com. Dig. Assumpsit E.* 205. *Hall v. Marston* 17 *Mass* 575. *Arnold v. Lyman ib.* 400. *Mason v. Waite ib.* 560.

*Greenleaf,* for the defendant, contended that the plaintiff's remedy was against the master alone, he being the owner *pro hac vice.* He had an interest in the vessel for each voyage, from its commencement, and could not be removed without his own

consent. *Abbot*, 184, 31. *Reynolds v. Toppan* 15 *Mass.* 370, *Taggard v. Loring* 16 *Mass.* 336. *Frazer v. Marsh* 13 *East* 238. Wherever the charterer has the whole management of the vessel, or is to victual and man her, he is deemed the owner. *McIntire v. Brown* 1 *Johns.* 229 *Hallet v. Columb. Ins. Co.* 8 *Johns.* 272. *Thompson v. Snow ante p.* 264. *Vallejo v. Wheeler Cowp.* 143.

But if the owner is in this case liable in general, his responsibility does not extend beyond the safe delivery of the goods at the port of destination. The cargo is then, in judgment of law, in the possession of the consignees. And if the master, being consignee, sells and misapplies the proceeds, he alone is responsible to the owner of the cargo. The owner of the ship is only bound for the acts of the master relative to her employment ; and this chiefly in respect of the receipt of the freight, which is earned as soon as the goods are landed. *Pothier on Mar. Contr.* 22. *Jacobsen's Sea laws* 222. *United Ins. Co. v. Scott* 1 *Johns.* 106, *Abbot*, 178, *note* 132, 137. In this case, moreover, the plaintiff made a special contract with the master, not for the transportation of his goods, but for the disposal of them after they were landed.

As to the receipt by the defendant of the money in *Granger's* hands ; no claim can be founded upon it in favor of the plaintiff. The defendant received in fact less than his own share of the freight money. And this share the master could not, on any principle, apply to the use of the plaintiff. *Granger* could pay over to the plaintiff only such money as the master might lawfully appropriate, and this was only his own proportion. The count for money had and received cannot therefore avail the plaintiff ; especially as it is controlled by the bill of particulars annexed to the writ.

Nor can the defendant be regarded as having adopted the act of the master, by charging the freight of the goods in his account filed in offset ; since he is entitled to protect himself by that precaution, against an adverse decision of the cause. And as to the custom, the evidence shews that the master is regarded as the agent of the shipper, who looks to him alone.

The opinion of the court was delivered at the succeeding *May* term in *Cumberland*, by

WESTON J. It appears in the case before us that the defendant's sloop was employed in carrying wood and lumber, on freight, from *Saco* river ; and that the plaintiff shipped on board said sloop, on freight, a certain quantity of lumber to be sold by the master, and the net proceeds paid over to the plaintiff.

Owners of vessels employed in the transportation of property, are common carriers ; and liable to the responsibilities, which by law attach to persons engaging in that business. They are made answerable for the safe carriage and delivery of all goods, entrusted to them, their servants, or agents ; unless a loss be occasioned by the act of God, or a public enemy. One of the objections taken in defence is, that if a liability ever attached to the defendant, it terminated upon the delivery of the lumber in *Newburyport*, and that the subsequent sale and disposition of it there, constituted no part of the duty of the owner or carrier ; that he derived no benefit from it ; and that in this part of the business, the master was made the special agent of the plaintiff, and that he ought to look to him alone. It is in testimony in this case, that the usage at *Saco* is, when lumber is shipped on freight, for the master to sell it, and bring home the money, and pay it over to the shipper ; unless otherwise directed. The freight or compensation, therefore, paid by the shipper, is a remuneration, not only for the carriage of the lumber, but for all the care and labor bestowed upon it by the master, until his trust is fulfilled. In the whole business, the master acts within the scope of his employment ; and we entertain no doubt that the owner is liable for the faithful performance of every duty, undertaken by the master in regard to the property, according to the usage proved. The case of *Kemp v. Coughtry*, cited from 11 *Johns.* 107, is an authority directly in point.

But it is principally insisted that the master, in this case, was owner, *pro hac vice*, and therefore the general owner not liable. If this fact had been established, the position is well founded

To constitute the hirer owner, *pro hac vice*, he should have the possession, and the entire control and direction of the vessel ; so that the general owner, for the time being, would have no right to interfere with her management. *2 Barn. & Ald.* 503. *Reynolds v. Toppan* 15 *Mass.* 370. *Taggard v. Loring* 16 *Mass.* 336, cited in the argument. In this case, he was to victual and man the vessel, and to have one half the freight money, and five dollars on each trip, for his compensation ; but it is no where testified that he was to have the control of the vessel. On the contrary it appears, that the defendant claimed to interfere and did interfere, in her management as owner. The master testified that for some prior trips, he had contracted for the freights ; but under the special direction of the defendant, who employed him for this purpose ; because he said he could make the best bargain. He further testified, that sometimes he settled with the freighters, and sometimes the defendant. It is proved by *Joseph Granger*, that he made the agreement with the defendant, to freight the vessel with wood, for the very trip when the plaintiff's lumber was carried, which was received on board in consequence of the failure of *Granger* to furnish a full load. It also appears, that the defendant demanded, as his own, and actually received, the freight earned by the vessel for this trip; including that which arose from carrying the plaintiff's lumber. The conduct of the defendant clearly negatives the assumption that the master had the control of the vessel ; or that he stood in the relation of owner, *pro hac vice*. His right to a portion of the freight, was only the stipulated mode of compensation.

The case of *Thompson v. Snow*, [*ante p.* 264,] cited for the defendant, varied essentially from the one before us. It appeared there that the master had the entire management of the vessel, without the interference of the owners, for several successive voyages ; and until she was stranded and sold.

The opinion of the court is, that the general error is well assigned ; that the judgment be reversed ; and that a new trial be had at the bar of this court.