## Harrington and others *against* M'Shane.

Watts.
2 w 443
130  166

Where the owners of a steamboat took produce to be carried and sold by them for a certain freight, and were bringing back in the same vessel the money which they obtained on the sale of the produce, when the vessel and the money were accidentally consumed by fire: *held*, that under the usage of trade on the western waters, they were acting as common carriers in going, as factors in selling the produce, and as common carriers in bringing back the money, and were liable for its loss, notwithstanding the accident.

WRIT of error to the district court of *Alleghany* county.

The defendant in error was the plaintiff below, and brought this action against Harrington, who was impleaded with Hyatt and others, owners of the steamboat "Home." The steamboat had received flour on freight from the plaintiff below to be transported to Louisville. There the master sold it, and was bringing back the proceeds in money, when, by accident, the boat took fire, and with the money and all its contents, was consumed.

The plaintiff below gave in evidence the following receipt of the defendants:

"Received, Pittsburgh, May 14th 1831, of H. M'Shane, one hundred barrels of superfine flower, which he has instructed me to sell on my arrival at Louisville, to best advantage—he to pay me freight on the same at the rate of 37½ cents per barrel."

On which there was the following affidavit indorsed:

[Harrington and others v. M'Shane.]

" Captain John Harrington, on oath, saith, that in accordance with the terms of the within receipt, he disposed of the flour at four dollars per barrel, deducting freight therefrom, and he had the proceeds of sale bringing with him to Pittsburgh on board the steamboat " Home," which was totally lost in the conflagration, along with the money belonging to the boat."

The plaintiff below then gave evidence to show that it was customary for steamboat owners on the western waters to take produce and sell it for the proprietors and return· the money, for no other consideration than the freight, and that in such cases bills of lading in the common form are not given.

The defendant then proved that the fire originated by accident and not from neglect, and that the money was consumed with the boat.

The court below was requested by defendant's counsel to charge the jury :

1. That the defendant, who acted for the other owners, was a voluntary bailee of the money, and liable for a loss only in case of negligence ; and that his contract as common carrier ceased on his sale of the flour at Louisville.

2. That even if he were liable as carrier, yet in case of loss by accidental fire, where no negligence is imputed, it should be considered as one of the unavoidable dangers of steamboat navigation, which, like a storm at sea, will not render the carrier liable.

The court (Grier, president) charged the jury, that if they believed the evidence, the defendant was liable as carrier, not only for the flour to Louisville, but also for the money from Louisville to Pittsburgh. And that the destruction of the steamboat by fire, although accidental, and not the consequence of negligence, would not excuse the defendant.

This opinion of the court was the alleged error.

*Fetterman*, for plaintiffs in error.

Under the terms of the contract, if the flour had been lost on the downward voyage, it is admitted the defendants below would have been liable as common carriers. But the moment the flour was safely delivered at Louisville, their responsibility in that capacity ceased, and their responsibility as factors commenced. Thenceforward, they may· be considered as having acted as a voluntary bailee, who would be excused from liability by the accidental conflagration of the boat. But suppose that the new relation of factor did not attach on landing the flour at the place of destination, and that they were still common carriers in bringing back the proceeds in money : should not the accident be considered one of the perils of our river navigation, which ought to discharge their liability? It is not material what may be the usage of trade upon the river. The question of liability must be decided by the terms of the receipt, which was the contract between the parties.

Mr Fetterman, in the course of his argument, cited, *Story on Bailm.* 348, 349, 352, 353, 433, 296 ; Emery *v.* Hersey, 4 *Greenl.* 407 ; Cook *v.* Com. Ins. Co., 11 *Johns.* 40 ; Jones et al. *v.* The Insurance Company, 4 *Dall.* 246 ; 8 *East* 126 ; 2 *Caines* 67 ; Bolin et al. *v.* Huffnagle, 1 *Rawle* 1 ; Garrigues *v.* Coxe, 1 *Binn.* 592 ; 4 *Term Rep.* 581 ; Tompkins *v.* Saltmarsh, 14 *Serg. & Rawle* 275; Ackley *v.* Kellogg, 8 *Cowen* 225 ; Gibbon *v.* Paynton, 4 *Burr.* 2300.

*Metcalf* and *Burke,* for defendant in error.

If the flour had been burned while the boat was descending the river, there could be no question of the defendants' liability.   And are they not equally liable as carriers of the money ?   We proved the usage of steamboats to take produce down the river and there sell.   The custom, as proved, showed that the character of carrier continued till the return of the proceeds.   Upon the evidence of usage, it is conceived, this case turns.   The terms of the receipt, therefore, are of little consequence, except as proof of the transaction.   The contract was for the payment of freight on the flour, and that the defendants should do with it what usage required to be done.   Suppose the defendants had stored the flour at Louisville and it had there been burned, would they not be liable?   Or suppose they had there deposited the money in bank, would that have amounted to a performance of their contract ?   We contend not.   They were bound to return the proceeds ;   and whether they consisted of goods or money is immaterial.   Until such return, their liability as common carriers continued.   Gillingham et al. *v.* Dempsey, 12 *Serg. & Rawle* 184, 188; 1 *Term Rep.* 187; 5 *Term Rep.* 201; Bridge *v.* Austin, 4 *Mass.* 115; *Ab. Ship.* 211; Gordon et al. *v.* Little, 8 *Serg. & Rawle* 533; 4 *Ohio Rep.* 243.

*Biddle,* in reply, adverted to the criticism of Judge Story (*Law of Bailments* 348, 349) on the case in 11 *Johns. Rep.* 107, and its obvious justice.   The several stages of agency may each be marked by an appropriate responsibility.   Is the captain, on the exchange at Louisville, endeavouring, as factor, to sell this flour, to be regarded as a common carrier on the river, and visited with all the harsh consequences arising out of that particular character ?   If, then, the continuity of relationship as carrier be broken on reaching Louisville, how is it to be resumed?   Not, certainly, by the express contract, the terms of which are exhausted ; nor by any just implication.   The whole subsequent agency was as *factor* at Louisville and *supercargo* on the return voyage.   Is the accidental mode of remittance to determine this liability ?

The opinion of the Court was delivered by

SERGEANT, J.—It appears by the evidence, that it is the usage on the western waters, for steamboat owners, in addition to the business of carrying goods, to act as factors, to make sales and returns, with-

[Harrington and others v. M'Shane.]

out being paid any other consideration than the freight; and that the defendants, by their agent Hyatt, who was also part owner in the boat, received the plaintiff's flour to transport to Louisville and sell, in consideration of being paid a certain freight per barrel. The flour was taken there and sold, and the money which it produced was in the boat on its return up the river, separated from other moneys, and was destroyed by a fire which consumed the boat and its contents. This fire was the result of accident, without any neglect of the defendants, or the master and crew, the latter having used every possible exertion to rescue the money from the flames.

The owners of steamboats transporting goods on freight are common carriers, and are liable for all losses in the course of their employment as such, except those occasioned by the act of God or the public enemy. This rule of the common law on the subject of carriers, was adopted on grounds of public policy, to prevent, on the part of those undertaking a public duty, secret frauds, out of the power of the proprietors of the goods to detect or establish by proof. No reason exists why the rule should be relaxed. In relation to a factor or consignee there is a different principle: he is responsible only for negligence. The question of the defendants' responsibility in the present case, depends on the character in which they held this money when the loss occurred. If they were merely factors, they are not responsible: if they were carriers, the reverse must be the case. Had the flour been lost in the descending voyage, by a similar accident, there could be no doubt whatever of the defendants' liability: they were certainly transporting it in the character of carriers. On their arrival at the port of destination and landing the flour there, this character ceased and the duty of factor commenced. When the flour was sold, and the specific money, the proceeds of sale, separated from other moneys in the defendants' hands and set apart for the plaintiffs, was on its return to them by the same boat, the character of carrier reattached. The return of the proceeds by the same vessel, is within the scope of the receipt and of the usage of trade as proved, and the freight paid may be deemed to have been fixed with a view to the whole course of the trade, embracing a reward for all the duties of transportation, sale and return. If the defendants, instead of bringing the money home in their own vessel, had sent it on freight by another, there would have been to the plaintiffs the responsibility of a carrier, and there ought not to be less if they chose to bring it themselves. If they had mixed the money up with their own, they would have no excuse for nonpayment. The defendants can be relieved from responsibility only by holding that the character of carrier never existed between these parties at all, or that if it existed on the descending voyage, it ceased at its termination, and that of factor began and continued during the ascending voyage. But if the defendants bring back, in the same vessel, other property, the proceeds of the shipment, whether specific money or goods, they do so as carriers, and not merely

as factors.   See *Story on Bailm.* 350.   In the cases of Kemp *v.* Coughtry, 11 *Johns.* 107; and Emery *v.* Hersey, 4 *Greenl.* 407, the points involved in the present case were discussed, and received the same determination.

Judgment affirmed.