## LEE and others *vs.* SALTER and others.

The master of a vessel on Lake Erie received for transportation a quantity of goods from a forwarding house at Buffalo, on which the forwarders had paid back freight and charges. The bills of lading directed the master to deliver the goods to the consignees upon paying such charges as were noted at the foot of the bill, and the bill retained by him also directed him to collect them of the consignees: *Held*, that proof of a general custom, which, in such cases, gave the forwarders a lien on the goods for their advances, and imposed on the carriers receiving them the duty of enforcing such lien for the benefit of the forwarders, was admissible in explanation of the contract of the master.

Where, in such case, the master delivered the goods without payment of the charges, *held*, that the owners were liable to the forwarders.

It is no defence to such action, that the goods were damaged on the voyage, by the act of God, to an amount exceeding that of the lien, provided they were still of sufficient value to satisfy it.

Where, on a shipment of goods by J. S. & Co., two bills of lading were signed by the master, the one of which contained the name of J. S. & Co., and the other, by a mistake of the clerk who wrote it, the name of R. S. & Co., as shippers, the correct bill being retained by the master; *Held*, that J. S. & Co. could maintain an action on the bill against the owners of the vessel, and explain the mistake by parol evidence.

AN error from the Recorder's court of the city of Buffalo. The action was assumpsit brought in the court below by the defendants in error, who were warehousemen and forwarding merchants at Buffalo, doing business under the firm name of J. Salter & Co. It appeared on the trial that on the 10th of August, 1839, the plaintiffs below shipped on board the Osceola, a vessel belonging to the defendants and of which one Billings was master, a quantity of goods consigned to a house in Michigan City, Indiana. The

plaintiffs had paid the river and canal charges on these goods and were by the course of trade entitled to the possession of them until such charges were repaid. Two bills of lading were signed by the master of the Osceola, but in the one delivered to the plaintiffs the name of *Rice, Salter & Co.*, was by a mistake of the clerk inserted as shippers, this firm having been dissolved and that of J. Salter & Co. formed a few weeks before. The bill of lading retained by the master was correct, containing the name of the latter house. Both bills contained directions to the master to deliver the goods to the consignees, &c., *upon paying the freight and charges as noted below*, which, as stated at the foot of the bills, were $208.52; and the bill in the possession of the master also contained directions to him to collect charges of the consignees.

The plaintiffs then offered to prove a custom ever since the commencement of the forwarding business at Buffalo, for masters of vessels on the lakes to receive goods from warehousemen and forwarders on which they claimed a lien for back freight and other charges paid by them, and to give bills of lading to carry such goods to the place of destination, deliver them to the consignees named, collect the charges claimed by the shippers and return the same to them; that, according to the regular course of business, the master would not deliver the goods without collecting such charges, when there were written directions on the bill; and that this service was performed without any other compensation to the masters or ship owners than the giving of the business to their vessels. This offer was objected to by the defendants, but the court received the evidence which fully proved the custom in all cases except where the forwarders had agencies at the ports of destination. Exception was taken by the defendants to this decision of the court. The plaintiffs then proved that when the goods arrived at their place of destination, the agent of the consignee refused to pay the charges upon them, alleging that they had been damaged on the voyage, and that thereupon the master delivered them without payment.

The plaintiffs having then rested, the defendants moved

for a nonsuit which the court refused. Exception. The defendants then offered to prove that the goods had been damaged in the course of the voyage, by the act of God, to an amount exceeding the plaintiffs' lien. This evidence was objected to and excluded, and the defendants again excepted.

The jury under the charge of the court found a verdict for the plaintiff, and the defendants, having made a bill of exceptions, bring error.

*W. H. Greene,* for the plaintiffs in error.

*M. Fillmore,* for the defendants in error.

*By the Court,* NELSON, Ch. J. 1. The proof of usage, in this case, which was full and to the point, settles the question as to the liability of the defendants. They are to be deemed well acquainted with the usual course of the trade and business in which their vessel was engaged; and bound to conform to all the duties and obligations imposed thereby, unless otherwise specially provided for. The master should not have delivered the cargo to the consignee, and thus discharged the lien for the back freight and charges, until these had been first satisfied. This duty the course of trade as proved imposed upon him, and, through him, upon the owners, as effectually as if it had been expressly stipulated for in the bill of lading. (*Cooper* v. *Cane,* 19 Wend., 386, and cases; *Dawson* v. *Kittle,* 4 Hill, 107.)

The case of *Kemp* v. *Coughtry,* 11 Johns., 107, is very analogous to the one in hand, as respects the point in question.

There the vessel was employed in the transportation of goods between the cities of Albany and New York; and, according to the course of trade, it was the business of the master to sell the cargo, if required, and bring back the money to the owners without any commission or compensation, except the ordinary freight.

Part of the proceeds in this case had been stolen from the cabin of the vessel, and the question was, whether a suit could be sustained against the owners.

The court held it might, as the sale of the goods, and return of the proceeds, were a part of the duty attached to the employment and arising out of the usual and ordinary course of the business, where no special instructions were given.

Here, according to the course of the business, the master virtually takes an assignment of the *lien* on the goods, which the forwarder has for his advances,· for the purpose of collecting the same of the consignee, and engages to perform the service as part of his duty attached to the employment, and as an inducement to letting him have the freight.

2. The defendants offered to prove that the goods were damaged in the course of the voyage, by the act of God, to an amount exceeding the claim of the plaintiffs, which was rejected as irrelevant and immaterial.

It is difficult to perceive what bearing the fact, if proved, could have upon the case. For, granting that the carriers are not responsible for the loss, as happening from inevitable accident, it is not pretended but that the goods were still abundant security for the charges, which is all that could be important, so far as the rights or interests of the defendants are concerned. If they could have shown that the value of the goods had fallen, by reason of the accident, below the amount of the lien, the proof might have been material as to the amount of the recovery. But no such offer was made, or fact pretended.

3. It is supposed, that the suit should have been brought in the name of the persons composing the firm of Rice, Salters & Co., as the bill of lading delivered to the forwarders mentioned the goods as shipped by this house. It is conceded that the goods were, in fact, shipped by the plaintiffs; and that the house of Rice, Salters & Co., which was the old firm that had just been dissolved, was inserted by mistake. · It also appears, that the bill of lading retained by the master was correct, and described the goods as shipped by the plaintiffs' firm. Taking the two bills together, it is left equivocal which house in fact shipped the goods; and it seems to me, under the circumstances, it was proper to let in oral proof for the purpose of explaining the ambiguity and ascertaining the truth of the case.

The case of *Ganete et al.* v. *Handley*, 4 B. & Cr., 684, goes further than is necessary here. There the firm was allowed to sustain an action upon a guaranty addressed to one of the members, by name, on showing that it was given for the benefit of all. The firm, in fact, advanced the money, to secure the payment of which the guaranty was given.' See also *Davenport* v. *Backstrow*, 1 Car. & Pay., 89, and *Willis* v. *Barrett*, 2 Stark., 29.

Judgment affirmed.