Stone *v.* Waitt.

## Stone & al. *versus* Waitt.

If the owner of goods, by contract with the carrier, waive any of his rights touching the delivery, the carrier will, so far as the waiver extends, be relieved from liability.

When the transit of goods is ended, and the delivery is completed, or is waived by the owner, the responsibility of the carrier ceases.

If the consignee take charge of the goods before they have arrived at the ultimate place of delivery, the carrier's risk is terminated.

Where goods are sent by sea, and the master of the vessel is also super-cargo, he acts, (after the arrival at the port of destination,) in relation to the selling of the goods, as the agent of the *consignor.*

When such supercargo, being also master of the vessel, has unsuccessfully used all reasonable efforts to effect a sale, and is under the necessity of leaving the port with his vessel, he is justified in committing the goods to a responsible commission merchant for sale.

Of the obligation of a common carrier to store goods, at the end of the transit.

Where, in assumpsit, an offer to be defaulted for a specified sum is made, and not accepted, and, on the trial a smaller sum is recovered by the plaintiff, the defendant's cost, arising subsequent to the filing of the offer, will be allowed, and set off against the *sum offered,* and the judgment will be for the plaintiff, for the balance, with his costs to the time when the offer was entered.

Assumpsit for a quantity of hay. It was agreed that twenty-three tons of hay were shipped for Boston on board a schooner, whereof the defendant was master, in June, 1848, and consigned or entrusted to the defendant, as master of said vessel, for sale. The hay was laden on deck, by agreement of parties ; and it arrived at Boston on Thursday night, in good order and condition and well covered. The defendant on Friday morning, and during that day, made efforts to sell it, without effect ; he had one offer, at ten dollars per ton, on six months, which was refused, he not knowing the responsibility of the person proposing to purchase, and not feeling authorized.

to sell on time.    Not being able to sell in Boston, the defendant, on Saturday forenoon, went to Brighton to sell, but could not find a purchaser there ; in the afternoon of that day, he went to South Boston and Dorchester, and was unable to find a purchaser at those places.    On Sunday a rain commenced, which continued, with occasional intermissions, until the next Friday night.  From Sunday to Friday night, the hay could not have been moved without spoiling.    An addition of two sails was put upon the board covering, to protect the hay from the storm, still it was injured by the severity and long continuance of the storm, one-third of its value.    Defendant endeavored during the storm to sell it ; Messrs. Patch & White thought they would take half of the hay at a stated price, but the storm continued so long, that at length they refused to take it at any price.    During the storm, the defendant saw William L. Stone, one of the plaintiffs, in Boston, and told him he had expended all the faculty he had, in endeavoring to sell the hay, and was unable to make sale, and asked him what he should do with it.    He replied only, that he wished the hay in the middle of the ocean.    The defendant's expenses in trying to sell, were $5,00.    Being unable to sell, and it being necessary for the defendant to leave with his vessel, he lodged the hay with a responsible commission merchant, for sale, and to do the best he could with it.    He sold it at auction.    The nett avails were $40,75, which the defendant, to whom the account of sales was rendered, afterwards received.

After returning from Boston to Gardiner, said Stone inquired of him, if he had sold the hay.    He replied he had not, but informed him of his efforts to sell, and the condition of the hay, and what he had done with it, in substance as narrated above ; but did not render him an account current of sales, and has not till the present time.

The defendant offered to be defaulted at the first term for $36,00.

The action is submitted on the above statement of facts.

If the court shall be of opinion, that a custom among masters of vessels sailing from the Kennebec river to Boston, hav-

ing property consigned or entrusted to them for sale, to leave said property with commission merchants for sale, under the circumstances of this case, can have any effect upon this case, then it is to be submitted to a jury to decide whether such a custom exists ; otherwise, such judgment, as the law and facts may warrant, is to be entered.

*Danforth* and *Woods*, for the plaintiff.

I. The defendant is liable as carrier. His duty was to store the hay, immediately on arrival. Kent's Com. vol. 2, 604, 605, and note ; and vol. 3, 214 and 215, 4th ed. ; Story on Bailments, 290 to 293, — 343 to 345, and 347 ; *Gibson* v. *Culver*, 17 Wend. 305.

The duty as carrier was not ended, until the hay was landed.

II. As consignee, the defendant is liable.

1. He was neglectful. It was his duty to store the hay immediately on its arrival. The deck of a vessel was no suitable place for keeping such an article a moment longer than was unavoidable.

2. He rendered no account of his sales or proceedings, and by that omission, he made the goods his own.

3. He constituted the commission merchant, to be the agent, not of the plaintiffs, but of himself, the defendant. This appears from many of his acts, particularly from his requiring the account of sales to be rendered to him, and the avails to be paid to him.

*North*, for the defendant.

TENNEY, J. — The risk of a common carrier terminates as soon as the goods have arrived at their place of destination, and are deposited there, and no further duty remains to be done under the contract to carry them. Story on Bailments, § 538. If the owner of the goods, by the contract with the carrier waive any of his rights touching the delivery, so far as the waiver extends, the carrier will be relieved of his liability. This is the law, notwithstanding any custom to the contrary. If a man has no warehouse of his own, and directs

the carrier to leave the goods at the wagon office, till he should find it convenient to remove, or to sell them, the carrier's responsibility will terminate with the deposit. *Ibid,* § 540, 541. When the transit is ended, and the delivery is either completed or waived by the owner, then the responsibility of the carrier ceases. *Ibid,* 542.

If the consignee take charge of the goods before they have arrived at the extreme or ultimate place of delivery, the carrier's risk will then terminate. *Ibid,* § 542; 2 Kent's Com. § 40, p. 469; *Strong* v. *Natally,* 4 Bos. & Pul. 16.

When the same person is not only master of the vessel, but also supercargo, he acts in two distinct characters. In the storage of the cargo and in the navigation of the vessel, and in the conveyance and the delivery of the cargo, he acts as the agent of the owners. But in the sale of the goods consigned to him, and accounting for the proceeds, he is not their agent, but the agent of the consignor. "After the arrival of the ship at the port of destination, he delivers the cargo as master, and receives it as consignee; all his authority as master is then determined." 2 Livermore, 215; *Williams* v. *Nichols,* 13 Wend. 58. These different characters in which the same person may act, are to be treated as distinct, as if the acts appropriate to each character, were confided to different persons. Story's Agency, sect. 36.

In the one case he is a common carrier, in the other a factor, and for any want of fidelity in that trust, his employers have the same remedies against him, that they would have against any other person and no other. *The Waldo,* Davee's R. 161.

It is insisted by the plaintiffs that the duties of the defendant, as a common carrier, had not terminated, when the hay was injured by the rain after its arrival in Boston; that it was incumbent on him, to have landed and to have stored it.

The facts of the case show no custom, on the subject of landing or storing hay, after it reaches the place of destination, where the master of the vessel is the consignee for the purposes of sale. The hay in this case "was shipped on board the schooner Echo, of which the defendant was master, to

be carried to Boston, and consigned, or entrusted to the defendant as master of said vessel, for sale." It does not appear that the defendant had any warehouse, or other building in which he was accustomed to store goods. The conduct of the parties shows, if it was the right of the shipper to have his goods landed and stored, that in this instance that right was waived by the plaintiffs. By the express agreement of the parties, the hay was carried upon deck, and was thereby in every respect as much exposed to rains on the voyage, as after its arrival.

The master continued to have charge of the vessel as master, after she arrived in Boston, and it must have been expected that a sale might be so speedy, that the storage would be an expense and trouble not anticipated under the circumstances; the landing of the goods would be no security from the weather, if they were not stored, and it could not have been designed, when they were to be in charge of the defendant, after he had fully performed all his duties as carrier, that they should be left upon the wharf, before their sale.

The conduct of the defendant shows, that he entered upon his duties as factor on Friday morning, the vessel having arrived on the preceding night; and he may be considered as having received the hay in his character of consignee from the time of his arrival. No complaint was made by one of the plaintiffs, who was informed by the defendant during the storm, that he had been unable to effect a sale, and was inquired of what should be done with the hay, indicative of an idea, that the contract as master of the vessel had not been fulfilled. Under all the facts of the case, the defendant is not shown to have neglected his duties as a common carrier.

Is he liable as consignee of the goods?

Factors are generally held liable for ordinary diligence. And if they act in good faith, and with reasonable diligence, they are protected. Story on Bailments, sect. 455.

If it was the expectation of the plaintiffs that sale of the hay should be made before it should be landed, so that it could be carried from the wharf by the purchaser, there has been no want of ordinary care imputable to him as consignee.

After all reasonable endeavors to make sale of the hay without success, and the time having arrived, when it became necessary that the defendant should depart with his vessel, it was his privilege to leave the hay in the hands of some suitable person for sale ; he placed it in the hands of responsible commission merchants for that purpose, after that, he was relieved from further responsibility in relation to the sale ; the persons with whom it was entrusted, became the agents of the plaintiffs, and were accountable to them. *The Waldo*, before cited; *Lawler* v. *Keaquick*, 1 Johns. Cas. 174; *Day* v. *Noble*, 2 Pick. 615.

The defendant received the sum of $40,75 as avails of the hay ; and paid the sum of $5, for expenses in his attempts to make sale of it, before it was delivered to the commission merchants. Not having rendered his account to the plaintiffs of his doings, while he had charge of the hay, nor informed them therein that he held in his hands a balance of the proceeds, which came to his possession, he was liable. He was entitled to deduct the expenses, which he had incurred. He offered to be defaulted for a sum as large as the plaintiffs are entitled to recover, and costs are to be allowed him, from the time, that the offer was filed. These costs are to be set off against the sum offered, and judgment entered for the balance, in favor of the plaintiffs, with costs to the time, when the offer to be defaulted was entered.