THE NEW HAMPSHIRE.

*(District Court, E. D. Michigan. January 12, 1880.)*

1. ADMIRALTY JURISDICTION — CONTRACT TO CARRY CARGO AND MAKE SALE — FAILURE TO ACCOUNT—LIABILITY OF VESSEL.

The owner and master of a vessel contracted to carry a cargo to its place of destination, *to sell it*, and return the proceeds to the consignor, less his freight. The master sold the cargo, but did not return or account for the proceeds. *Held*, that the vessel was not liable, and that a court of admiralty had no jurisdiction.

2. SAME—DELIVERY TO NAMED CONSIGNEE.

But if this had been a contract to deliver the cargo to a *consignee already named*, and to collect from him the freight charges and advances, together with the price thereof, and, after deducting the freight, to pay the consignor

the balance, and such a contract were shown to be usual and customary in the trade in which the vessel was engaged, *it seems* the vessel would be liable for the conversion of the money.

In Admiralty. On exceptions to libel for breach of contract.

The libel set forth the shipment, on board the schooner New Hampshire then lying at Presque Isle, and bound to Detroit, of a cargo of cedar posts, which the master, who was also the owner, agreed to carry to Detroit, and there dispose of, and pay the proceeds of the sale to the libelant, for a freight of one dollar and seventy-five cents a cord, to be retained from such proceeds; that the schooner arrived at Detroit with her cargo, which the master sold at five dollars a cord, but has never yet delivered or accounted to the libelant for the proceeds of the same. To this libel claimant excepted for want of jurisdiction.

*John C. Donnelly*, for libelant.

*George E. Halliday*, for claimant.

BROWN, J. The gist of the action in this case is the receipt and misappropriation, by the master, of the proceeds of the cargo. As he was owner, as well as master, there can be no doubt that he is liable in some form of action. The real question is whether the contract to carry the posts, to sell them, and return the proceeds, is a single, indivisible contract, and that a maritime one; or whether, in fact, there are not two contracts: one as master to transport the cargo, and one as factor to sell the same, and account for the proceeds. In this case one of these contracts would be clearly maritime, the other not. If it were a simple case of a contract to deliver the cargo to a consignee named, and to collect from him the freight charges and advances, together with the price thereof, and after deducting the freight to pay to the libelant the balance, and such a contract were shown to be usual and customary in the trade in which the vessel was engaged, I should find little difficulty in holding it to be an entire maritime contract, for which the vessel would be liable. This was held to be the law in the case of *The Hardy*, 1 Dill. 460; and also by the learned judge for the districts of Mississippi in the unreported case of *The Emma*. In delivering his opinion in this latter case, Judge HILL drew a distinction between cases where the master of the vessel contracts to deliver goods to the consignees to whom they had been sold, and collect and bring back the price thereof to the shipper upon a C. O. D. bill of lading, and cases where a cargo is delivered to a vessel upon a contract with the master that he shall convey them to some market, and there sell them for the account of the owner, and return the money to the shipper. In the one case the collection of the money is regarded as a mere incident to the carrying and delivery of the cargo; in the other, the master is vested with certain duties as the agent, not of the owner of the vessel, but of the owner of the cargo. This contract to make sale of the cargo is entirely outside his duties as master, and is a service in no sense maritime. I find this dis-

tinction sustained by a great weight of authority, although there are two or three cases in which a different conclusion seems to have been reached.

In *Kemp* v. *Coughtry*, 11 Johns. 107, the master received a quantity of flour to be carried to New York, and sold in the usual course of such business, for the ordinary freight. The flour was sold by the master for cash, and, while the vessel was lying at the dock, the cabin was broken open, and the money stolen out of the master's trunk while he and the crew were absent. It was held that the owners of the vessel were answerable, though no commissions were allowed beyond the freight for the sale of the goods and bringing back the money. But the opinion of this case was apparently put upon the ground that, after the receipt of the money and its deposit upon the vessel, the master became as much of a common carrier of the money as he had been of the cargo, and stood in the same position as if he had exchanged this cargo for another, and laden it on his vessel to be carried to the original port of departure. It was held that it made no difference whether the return cargo was in money or in goods. It will be observed the breach was not for a failure to account for the proceeds, but for a loss occurring after they were placed on board the vessel.

In the case of *Harrington* v. *McShane*, 2 Watts, 443, the facts were substantially the same, except that the vessel and money were accidentally burned on the return trip. The court held the vessel liable upon the express ground that she was as much a common carrier of the money upon the return trip as she was of the outward cargo, and drew a distinction between the acts of a master as a common carrier and a factor: "On their arrival at the port of destination, and landing the flour there, this character of common carrier ceased, and the duty of factor commenced. When the flour was sold, and the specific money, the proceeds of sale, separated from other moneys in the defendant's hands and set apart for the plaintiffs, was on its return to them by the same boat, the character of common carrier reattached. The return of the proceeds by the same vessel is within the scope of the receipt, and of the usage of trade as proved, and the freight paid may be deemed to have been fixed with a view to the whole course of the trade, embracing a regard for all the duties of transportation, sale, and return."

In a subsequent case in New York (*Williams* v. *Nichols*, 13 Wend. 58) the court held that where the master of a vessel is also the consignee of the cargo, he stands in the relation of agent to two distinct principals: in the stowage of the cargo, its safe conveyance, and delivery, he is the agent of the ship-owner; but in its sale and accounting for its proceeds, he is the agent of the consignor; and in such case, where the owner receives only the *freight*, and the master *commissions* upon the sales, and the master neglects to account for the proceeds, an action will not lie against the owner. This case, ex-

cept in the fact that the master received a commission, is directly in point. See, also, *The Waldo*, Davies, 161; 2 Pars. Shipp. 21; *The Robinson*, cited in 1 Brown, Adm. 221; *Peck* v. *Laughlin*, 21 Alb. Law. J. 94.

In *Emery* v. *Hersey*, 4 Me. 407, the court held the owner of the vessel liable, as well for the payment of the proceeds to the shipper as for the safe transportation of the goods; it being shown to be the usual course of business for goods shipped on freight to be consigned to the master for sale and return. This case, however, is practically overruled by *Stone* v. *Waitt*, 31 Me. 409, in which the court held that in making the sale the master was acting in the distinct character of supercargo. The earlier case is nowhere quoted in the opinion, but I find it difficult to reconcile the two.

In *Moseley* v. *Reed*, 2 Conn. 389, the master signed a bill of lading *with the knowledge and assent of the owner*, in which the master was named as the consignee, and it was held obligatory upon the owner, who thereby became the consignee as well as the carrier of the goods, and liable for them to the shipper; but the chief justice, in delivering his opinion, appears to put his conclusion upon the ground that the owner *assented* to the bill of lading, whereby the master was charged with the responsibility of selling the property and accounting for the proceeds.

While there are some intimations in these common-law cases that would seem to support the theory that, under certain circumstances, the owner might be liable for the acts of the master in selling the goods, there are none of them which decide this point, except the early case in Maine, which is practically overruled by the subsequent case in the same state. The cases of *The Waldo*, *The Emma*, and *The Robinson* are the only ones in which the point seems to have been discussed in the admiralty courts, and all of them are adverse to the position assumed by the libelant here. The case of *Monteith* v. *Kirkpatrick*, 3 Blatchf. 279, is not in point. I think, upon authority as well as upon reason, the libel does not show a case within the jurisdiction of the court. If it had appeared that the master had received the proceeds of the sale, and taken them aboard the schooner for the purpose of carrying them back to the original port of departure, and in the course of the return voyage they were lost, the liability of a common carrier might be held to reattach; but there is no allegation of this kind in the libel. I think the court has no jurisdiction in the case, for the reason that the contract of the master to sell the goods and account for the proceeds was not maritime.

The libel must therefore be dismissed, but without costs, as the want of jurisdiction appears upon the face of the pleadings.